**WILENTZ, GOLDMAN, & SPITZER, P.A.**
Tracy A. Armstrong, Esq.
90 Woodbridge Center Drive,
Suite 900 Box 10
Woodbridge, New Jersey 07095
Phone: (732) 855-6020
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AQSA KHAN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOPIX MEDIA LAB, LLC. d/b/a MUGGLENET AND TONY ROMANDO,<br><br>Defendants. | Civil Action No.<br><br>**COLLECTIVE AND CLASS ACTION AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Named Plaintiff, Aqsa Khan ("Named Plaintiff Khan"), on behalf of herself and all others similarly situated, by and through her attorneys, upon personal knowledge as to herself and upon information and belief as to other matters, brings this Collective and Class Action Complaint against Defendants Topix Media Lab, LLC. d/b/a MuggleNet ("Defendant MuggleNet") and Tony Romando ("Defendant Romando"), and all other affiliated entities and/or joint employers and alleges as follows:

**NATURE OF THE ACTION**

1. Named Plaintiff Khan brings this lawsuit seeking recovery against Defendants for Defendants' violation of the Fair Labor Standards Act, as amended (the "FLSA" or the "Act"), 29 U.S.C. §201 et. seq. and the New Jersey State Wage Payment Law, N.J. S.A. 34:11-56a et seq. (as

amended on August 6, 2019, S1790), and associated New Jersey Administrative Code, Ch.12:56-1:1, et. seq. ("NJAC") (collectively the "NJWHL"), and other applicable state laws.

2. Plaintiff also brings this action on behalf of herself and all other similarly situated New Jersey Plaintiffs (the “New Jersey Class Members”) as a class action under Federal Rule of Civil Procedure 23 to remedy violations of the New Jersey Wage Payment Law (“NJWPL”), N.J.S.A. 34:11-4.1, et seq. and the New Jersey Wage and Hour Law (“NJWHL”), N.J.S.A. 34:11-56a, et seq.,

3. Named Plaintiff brings this lawsuit against Defendants as a collective action on behalf of herself and all other persons similarly situated who suffered damages as a result of Defendants' violations of the FLSA pursuant to the collective action provisions of 29 U.S.C. § 216(b), and as a class action pursuant to Rule 23.

4. Defendant MuggleNet engaged the Collective Members, a for-profit corporation, to create and provide content for Defendants’ digital media operations, including a website dedicated to the *Harry Potter* franchise and associated social media platforms. Although Defendants classified Plaintiffs as “volunteers,” Plaintiffs were required to perform defined tasks and meet ongoing time and performance requirements to continue working for Defendants. For multiple years, as further described below, the Collective Members regularly performed work for Defendants without receiving any wages or other lawful compensation.

5. Defendants knowingly and willfully designated Plaintiffs as “volunteers” and chose not to pay wages that were due to the Collective Members to the benefit and profit of the Defendants.

6. Defendants also knowingly and willfully failed to pay the Collective Members their accrued but unpaid sick pay and reimbursement for business expenses, constituting additional unpaid wages.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Named Plaintiff's claims under the Fair Labor Standards Act pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. This Court has supplemental jurisdiction over Named Plaintiff's New Jersey Wage and Hour Law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same nucleus of operative facts as the federal claims.

9. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

10. This Court has personal jurisdiction over Defendant Romando because he is the President of Defendant MuggleNet which conducts business and employs workers in New Jersey, and the actions he took, including actions taken in New Jersey as alleged in this Complaint, were directed at and affected the Company and its employees in New Jersey, including all of the named Plaintiffs and numerous others.

## PARTIES -- PLAINTIFFS

11. Plaintiff Aqsa Khan ("Named Plaintiff Khan") worked as a Marketing Assistant and Content Creator for Defendant. She resides in the State of New Jersey.

12. Similarly situated Plaintiffs are former employees of Defendants who they improperly labeled as "volunteers" and did not pay for their work, and are representative of the collective of MuggleNet employees who were aggrieved by the Defendants (hereafter referred to as "similarly situated employees").

**PARTIES -- DEFENDANTS**

13. Defendant Topix Media Lab, LLC. d/b/a MuggleNet ("Defendant" or "MuggleNet") is a corporation registered in the State of New York and conducts business in the State of New Jersey. MuggleNet is a long-running website dedicated to the *Harry Potter* franchise that publishes news, commentary, editorials, and user-submitted content, operates associated social media accounts and online forums, generates revenue through advertising, merchandise sales, and affiliate partnerships, and is not officially affiliated with the franchise's rights holders.

14. Defendant Tony Romando was and is the President of Defendant MuggleNet. On information and belief, he resides in the State of New York.

15. Upon information and belief, at all times relevant to this Complaint, the Defendants' annual gross volume of sales made, or business done was not less than $500,000.00.

16. At all times relevant to this Complaint, the Defendants were and are employers engaged in commerce under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

**CLASS AND COLLECTIVE ALLEGATIONS**

17. This action is properly maintainable as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) and as a class action pursuant to Rule 23.

18. This action is brought on behalf of Named Plaintiff and a putative collective consisting of similarly situated employees who performed work for Defendants and were not paid for their work.

19. The Named Plaintiff and potential plaintiffs who elect to opt-in as part of the collective action are all victims of the Defendants' common policy and/or plan to violate the FLSA NJWPL, and NJWHL, as well as all other applicable state laws, by illegally designating employees as "volunteers" and failing to provide wages pursuant to 29 U.S.C. § 207.

20. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be in excess of 100 employees. In addition, the names of all potential members of the putative class are not known.

21. The claims of the Named Plaintiff are typical of the claims of the putative class. The Named Plaintiff and putative class members were all subject to Defendants' policies and willful practices of failing to pay employees who they improperly designated as “volunteers.” The Named Plaintiff and putative class members have thus sustained similar injuries as a result of Defendants' actions.

22. Upon information and belief, Defendants uniformly apply the same employment policies, practices, and procedures to all employees who work as “volunteers” for Defendants.

23. The Named Plaintiff and her counsel will fairly and adequately protect the interests of the putative class. The Named Plaintiff has retained counsel experienced in complex wage and hour class and collective action litigation.

24. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Named Plaintiff and putative class lack the financial resources to adequately prosecute separate lawsuits against Defendants.

25. Furthermore, the damages for each individual are small compared to the expense and burden of individual prosecution of this litigation.

26. This action is properly maintainable as a collective action pursuant to § 216(b) of the Act.

27. Plaintiffs' claims under the NJWPL and NJWHL, and all other applicable state laws, are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

28. A class action under Rule 23 and a collective action under § 216(b) also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendants' policies.

**FACTS**

29. Based upon the information preliminarily available, and subject to discovery, beginning in approximately 2020 Defendant Topic Media purchased MuggleNet. Defendants employed the members of the putative class to perform tasks in furtherance of their digital media business, including but not limited to, journalism, news, marketing, promotions, creating and editing social media content, and attending conferences and other events.

30. Based upon the information preliminarily available, and subject to discovery, Defendants improperly designated Named Plaintiff and members of the putative class as "volunteers" during their employment and refused to compensate Named Plaintiff and similarly situated employees, for any hours worked in a work week.

31. In 2020, Defendant Romando told Kathleen ("Kat") Miller, a paid employee and MuggleNet's Creative and Marketing Director, that Defendant Topix Media intended to start paying its "volunteers" as soon as possible because he was afraid that the "volunteers" would at some point "uprise" against him because they were not being paid.

32. Defendant Romando told Ms. Miller that he knew not paying the MuggleNet workers who were designated "volunteers" was illegal.

33. In February 2020, Ms. Miller posted on MuggleNet's FaceBook page, which was used by employees and "volunteers" to communicate, that MuggleNet would be profitable and present opportunities for the "volunteers."

34. Ms. Miller had multiple conversations with Defendant Romando about when Defendant Topix Media would begin to pay its "volunteers," but Defendant Romando did not begin paying them.

35. In or about September 2022, Named Plaintiff Khan was hired as a Marketing Assistant and Content Creator.

36. Named Plaintiff Khan had the primary responsibility to promote MuggleNet's website, digital media and published books through marketing and promotional initiatives, including weekly social media posts.

37. Named Plaintiff Khan was interviewed for the position of Marketing Assistant and Content Creator by Elizabeth Young, Marketing Director.

38. Named Plaintiff Khan raised the issue of compensation during her job interview, and Ms. Young told Named Plaintiff Khan that there may be opportunities for compensation by Defendants.

39. Named Plaintiff Khan was aware of the February 2020 post on the MuggleNet FaceBook page and anticipated that she would start being compensated for her work.

40. Upon information and belief, similarly situated Plaintiffs were aware of the February 2020 post on the MuggleNet Facebook page and anticipated that they would start being compensated for their work.

41. Defendant Romando controlled the operations of MuggleNet through the paid supervisors he employed.

42. Defendant Romando supervised Phil Sexton, Defendant Topix Media's Vice President of Publishing.

43. Mr. Sexton supervised Ms. Miller and Felicia Grady, Managing Editor.

44. Many times, over the years that she was employed by Defendants, Ms. Miller discussed with Mr. Sexton and Mr. Romando paying Defendant Topix's "volunteers" that were employed by Defendant Topix Media.

45. Ms. Miller continually advocated for the "volunteers" to be paid.

46. Mr. Romando was aware the "volunteers" should be paid and decided not to pay them.

47. With the authority given to them through Defendant Romando, Ms. Miller and Ms. Grady oversaw managers who assigned the "volunteers" specific content that they should include in their work and provided deadlines by which the work was required to be completed.

48. Mr. Romando made the final decision as to whether workers could be hired and terminated, although Ms. Miller and Ms. Grady could provide their suggestions as to hiring and termination.

49. According to Defendant MuggleNet policy and procedure, and as confirmed on their website, "volunteers," including Named Plaintiff Khan and all other similarly situated employees were <u>required</u> to dedicate a certain amount of hours per week to their marketing and promotional work, as well as attend regular meetings, in order to qualify to work for Defendants.

50. Named Plaintiff Khan and all other similarly situated employees spent approximately 8-55 hours per month creating and scheduling marketing content for Defendant MuggleNet.

51. During November and December, these hours increased due to additional holiday promotional efforts such as giveaways and expanded marketing campaigns.

52. Named Plaintiff and all other similarly situated employees also spent time completing quarterly planning submissions via Meta Workspace, which involved brainstorming ideas for upcoming marketing and promotional initiatives.

53. Named Plaintiff and all other similarly situated employees also participated in several large marketing, promotional or charitable initiatives, and business trips on behalf of Defendant MuggleNet.

54. For example, in September 2024, Named Plaintiff Khan attended a "Back to Hogwarts" event at Grand Central Station after which she created social media content including approximately 3-4 videos and real-time Instagram stories. The content creation, editing and posting for this event took approximately 10 hours over and above her regular hours. This did not include the time spent travelling to and attending the event.

55. In addition, Named Plaintiff Khan attended a three-day content creation trip for the grand opening of Epic Universe in May 2025. Following this trip, Plaintiff Khan spent approximately three (3) days editing content, organizing footage, and creating promotional materials.

56. Ms. Miller advocated for Ms. Khan to be paid for her trip to Epic Universe in May 2025.

57. Ms. Khan was aware that Ms. Miller advocated for her to be paid for her trip to Epic Universe in May 2025 and expected that she would be compensated.

58. Ms. Khan was not paid for her to Epic Universe in May 2025.

59. Similarly, in September 2025, Named Plaintiff Khan attended a three (3) day event representing Defendant MuggleNet during which she gathered information, took notes, and relayed relevant details back to the marketing team for content and promotional use.

60. Plaintiff Khan was not compensated for her time or business expenses for attending any of these business trips or creating the promotional content.

61. In addition, while Plaintiff Khan was on this business trip abroad, Defendants implemented widespread employee terminations.

62. Defendant Romando made the final decision to terminate these employees.

63. As a result, Named Plaintiff Khan was effectively stranded in a foreign country without any ability to communicate with her managers, all of whom had been terminated.

64. Named Plaintiff Khan and all other similarly situated employees were not compensated for any events they attended nor for the content created following such events.

65. Defendant MuggleNet profited from the marketing and promotional efforts of Named Plaintiff Khan and all other similar situated employees.

66. Named Plaintiff Khan and all other similarly situated employees were required to work regular hours per month plus attend regular meetings to hold their “volunteer” positions.

67. Indeed, Named Plaintiff Khan and all other similarly situated employees were working 8-55 hours per month in addition to attending regular meetings, creating quarterly submissions, and attending large-scale events followed by the creation of marketing content.

68. Named Plaintiff Khan and all other similarly situated employees were not paid for these hours or their business expenses.

69. Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA the NJWHL, as well as other applicable state laws, as described in this Complaint.

70. At all times material hereto, Named Plaintiff and all similarly situated employees were performing their duties without pay for the benefit of and on behalf of Defendants.

71. At all times pertinent to this Complaint, Defendants failed to comply with Title 29 U.S.C. §§ 201-209, applicable provisions of the NJWHL, as well as other applicable state laws, in that Named Plaintiff and those similarly situated employees performed services and labor for

Defendants for which Defendants made no provision to pay Named Plaintiff and other similarly situated employees compensation to which they were lawfully entitled for all of the hours worked.

**COUNT I**

**Violation of the Fair Labor Standards Act 29 U.S.C. §§ 206, 216(b)**

72. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

73. At all relevant times, Defendant MuggleNet operated a commercial digital media business and was an enterprise engaged in commerce within the meaning of the FLSA, with an annual dollar volume of sales or business done in excess of $500,000.

74. At all relevant times, Defendants were "employers" within the meaning of 29 U.S.C. § 203(d) and exercised operational and managerial control over Plaintiffs and the Collective Members, including the authority to hire them, assign work, set expectations and time requirements, and determine whether and how they would be paid.

75. During the relevant Pay Periods, Plaintiffs and the Collective Members were employees engaged in commerce, or in the production of goods for commerce, within the meaning of 29 U.S.C. § 206, including by regularly engaging in interstate communications by telephone, email, and the internet, and, at times, interstate and international travel in furtherance of Defendants' business.

76. Plaintiffs and the Collective Members are similarly situated individuals within the meaning of 29 U.S.C. § 216(b).

77. Defendants knowingly and willfully classified Plaintiffs and the Collective Members as "volunteers," despite requiring them to perform productive work integral to

Defendants' business operations, assigning defined duties, imposing ongoing time and performance requirements, and exercising control over their work.

78. Plaintiffs and the Collective Members regularly worked 8-55 hours per month, yet Defendants failed to pay them minimum wages or any wages at all for the hours worked.

79. Plaintiffs and the Collective Members were not exempt from the minimum wage requirements of the FLSA during any Pay Period, including because they were not paid on a salary basis and did not receive a predetermined amount of compensation within the meaning of 29 C.F.R. §§ 541.602 and 541.603.

80. Plaintiffs and the Collective Members reasonably expected that they would be compensated for their work.

81. Defendants knowingly and willfully failed to pay Plaintiffs and the Collective Members for any hours worked during the Pay Periods, despite knowing that such compensation was required by law.

82. Defendants knew or showed reckless disregard for whether their conduct was prohibited by the FLSA by intentionally misclassifying Plaintiffs and the Collective Members as "volunteers" in order to avoid paying wages, while deriving a direct and substantial economic benefit from their labor.

83. By reason of Defendants' intentional, willful, and unlawful acts, Plaintiffs and the Collective Members have suffered damages, including unpaid minimum wages, and have incurred costs and reasonable attorneys' fees.

84. By their conduct, Defendants violated the FLSA, including 29 U.S.C. § 206, by failing to pay Plaintiffs and the Collective Members the required minimum wage for all hours worked.

85. Defendants' violations of the FLSA were willful, entitling Plaintiffs and the Collective Members to a three-year statute of limitations pursuant to 29 U.S.C. § 255(a).

86. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the Collective Members are entitled to recover unpaid wages, an equal amount in liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Named Plaintiff Khan, on behalf of herself and all similarly situated employees, demand judgment against Defendants, jointly and severally, for the following:

A. For all unpaid salary owed to them;

B. For payment of all unreimbursed business expenses incurred by them;

C. For attorneys' fees and costs; and

D. For such other relief as the Court deems fair and equitable.

**COUNT II**
**Violation of the NJWPL, N.J.S.A. 34:11-4.1 et seq.**

87. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

88. Plaintiffs and the New Jersey Class Members were employed by Defendants in New Jersey and performed work for Defendants during the relevant Pay Periods.

89. During the Pay Periods, Plaintiffs and the New Jersey Class Members performed productive work integral to Defendants' business operations, pursuant to defined duties and time requirements imposed by Defendants.

90. Despite this work, Defendants failed to pay Plaintiffs and the New Jersey Class Members any wages for the hours they worked during the Pay Periods.

91. Defendants' failure to timely pay wages earned by Plaintiffs and the New Jersey Class Members constitutes a violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq.

92. Plaintiffs and the New Jersey Class Members reasonably expected that they would be compensated for their work.

93. Defendants knowingly and intentionally classified Plaintiffs and the New Jersey Class Members as "volunteers" to avoid paying wages required by law, despite exercising control over their work and deriving a direct economic benefit from their labor.

94. Defendants have not paid, cannot pay, and/or will not pay the wages due to Plaintiffs and the New Jersey Class Members.

95. At all relevant times, Defendants were "employers" within the meaning of N.J.S.A. 34:11-4.1(a), including because they were officers, directors, and/or individuals with management authority who exercised control over Plaintiffs' employment and compensation.

96. Defendants directly participated in and made the decisions to continue employing Plaintiffs and the New Jersey Class Members during the Pay Periods while failing to pay them the wages earned, either when due or at any time thereafter.

97. As a result, Defendants are jointly and severally liable to Plaintiffs and the New Jersey Class Members for all unpaid wages due under the NJWPL.

WHEREFORE, Named Plaintiff Khan, on behalf of herself and all similarly situated employees, demand judgment against Defendants, jointly and severally, for the following:

A. For all unpaid salary owed to them;

B. For payment of all unreimbursed business expenses incurred by them;

C. For attorneys' fees and costs; and

D. For such other relief as the Court deems fair and equitable.

**COUNT III**
**Violation of the NJWHL, N.J.S.A. 34:11-56a et seq.**

98. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

99. During the relevant Pay Periods, Plaintiffs and the New Jersey Class Members were "employees" within the meaning of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a et seq.

100. At all relevant times, Defendants were "employers" within the meaning of the NJWHL and exercised control over the terms and conditions of Plaintiffs' and the New Jersey Class Members' work.

101. The minimum wage provisions of the NJWHL applied to Defendants and protected Plaintiffs and the New Jersey Class Members.

102. During the Pay Periods, Plaintiffs and the New Jersey Class Members performed productive work integral to Defendants' business operations pursuant to defined duties and time requirements imposed by Defendants.

103. Despite this work, Defendants failed to pay Plaintiffs and the New Jersey Class Members the applicable minimum wage, or any wages at all, for the hours they worked during the Pay Periods.

104. Defendants' failure to pay minimum wages or any wages for work performed constitutes violations of the NJWHL.

105. Plaintiffs and the New Jersey Class members reasonably expected they would be compensated for their work.

106. Defendants knowingly and intentionally misclassified Plaintiffs and the New Jersey Class Members as “volunteers” to avoid paying minimum wages required by law, while deriving a direct economic benefit from their labor.

107. Defendants have not paid, cannot pay, and/or will not pay the wages due to Plaintiffs and the New Jersey Class Members.

108. At all relevant times, Defendants were officers, directors, and/or individuals with management authority who directly participated in decisions regarding the employment and compensation of Plaintiffs and the New Jersey Class Members, and are therefore personally liable, jointly and severally, for the wages due under the NJWHL.

109. Defendants engaged in a common policy, pattern, and practice of failing to pay minimum wages to Plaintiffs and the New Jersey Class Members in violation of the NJWHL.

110. Defendants’ violations of the NJWHL were willful and intentional.

WHEREFORE, Named Plaintiff Khan, on behalf of herself and all similarly situated employees, demand judgment against Defendants, jointly and severally, for the following:

A. The minimum wages that were due for the hours they worked during the Pay Periods and that were not paid, as alleged above;

B. For attorneys' fees and costs, N.J.S.A. 34:11-56a-25; and

C. For such other relief as the Court deems fair and equitable.

**PRAYER FOR COLLECTIVE AND CLASS ACTION RELIEF**

Plaintiffs respectfully request an Order:

a. Requiring Defendants to file with the Court and provide to Plaintiffs’ counsel a list of all names and current (or best known) home addresses and email addresses of all individuals who were designated as “volunteers” for Defendants and, thus, were not paid for all Pay Periods

for which they should have been paid, and/or were not reimbursed for business expenses they incurred;

b. Authorizing Plaintiffs' counsel to issue a notice informing additional Collective Members who have not already opted in to this action that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

c. Designating the named Plaintiff, Aqsa Khan, as class representative of the Collective and the New Jersey Class, and counsel of record as Class Counsel;

d. Finding that Defendants willfully violated the applicable provisions of the FLSA, NJWHL and NJWPL by failing to pay all required wages to Plaintiffs and Collective/Class Members, including by failing to reimburse business expenses to Plaintiffs and Collective/Class Members.

e. Granting judgment in favor of the Plaintiffs, the Collective Members, and the New Jersey Class Members on their FLSA, NJWHL and NJWPL claims;

f. Awarding compensatory damages to the Plaintiffs, the Collective Members, and the New Jersey Class Members in amounts to be determined;

g. Awarding pre-judgment and post-judgment interest;

h. Awarding liquidated damages to the Plaintiffs and the Collective Members;

i. Awarding all costs and reasonable attorneys' fees incurred in prosecuting this claim;

j. Awarding reasonable incentive awards to the named Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of other Collective Class and New Jersey Class Members, and the risks they are undertaking;

k. Granting leave to add additional plaintiffs to the case by motion, the filing of written consent forms, or any other method approved by the Court; and

l. Granting any further relief that the Court deems just and equitable.

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Tracy A. Armstrong, Esq.
90 Woodbridge Center Drive
Woodbridge, New Jersey 07095
(732) 855-6020
By: /s/Tracy A. Armstrong
Tracy A. Armstrong

Dated: October 16, 2026

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues herein stated.

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Tracy A. Armstrong, Esq.
90 Woodbridge Center Drive
Woodbridge, New Jersey 07095
(732) 855-6020

By: /s/*Tracy A. Armstrong*
Tracy A. Armstrong

Dated: October 16, 2026

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that to the best of her knowledge and information, the matter in controversy is not currently the subject of any other pending court action or arbitration proceeding, in which the Plaintiffs herein and other potential collective/class plaintiffs have asserted claims against Defendants for the wages for which Plaintiffs seek payment in this case.

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Tracy A. Armstrong, Esq.
90 Woodbridge Center Drive
Woodbridge, New Jersey 07095
(732) 855-6020
By: /s/*Tracy A. Armstrong*
Tracy A. Armstrong

Dated: October 16, 2026



#95808040.1

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1(d)(3)**

Pursuant to Local Civil Rule 201.1(d)(3), the undersigned hereby certifies that to the best of her knowledge and information, the damages recoverable in this matter exceeds the sum of $150,000, exclusive of interest and costs and punitive damages.

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Tracy A. Armstrong, Esq.
90 Woodbridge Center Drive
Woodbridge, New Jersey 07095
(732) 855-6020
By: /s/*Tracy A. Armstrong*
Tracy A. Armstrong

Dated: October 16, 2026